IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

                                                  No. CR 03-847 KG

v.

STEVEN MADRID,

     Defendant.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Steven Madrid's Motion to Reduce Sentence

under 18 U.S.C. § 3582(c)(1)(A)(i) (Motion) (Doc. 144), the United States' Response to Defendant's

Motion for Compassionate Release (Response) (Doc. 145), and Mr. Madrid's Reply in Support of

Compassionate Release (Doc. 149). The Motion is now fully and timely briefed for the Court's

consideration. After review of the parties' briefing and the relevant law, the Court grants in part and

denies in part Mr. Madrid's Motion (Doc. 144).

*I.*     *Background*

After a jury trial, Mr. Madrid was found guilty of six counts charged in a Second Superseding

Indictment, including: one count of conspiracy to possess with the intent to distribute 500 grams and

more of a detectable amount of methamphetamine (Count 1), three counts of distribution of 50 grams

or more of a detectable amount of methamphetamine (Counts 2, 4, 5), one count of brandishing a

firearm during and in relation to a drug trafficking crime (Count 3), and one count of possessing a

firearm in furtherance of a drug trafficking crime (Count 6). (Doc. 63) at 1-2. On March 21, 2005,

the Honorable John Conway sentenced Mr. Madrid to 619 months imprisonment with the Bureau of

Prisons followed by a five-year term of supervised release. (Doc. 88) at 3, 4. Specifically, Judge Conway imposed a 235-month sentence for Counts 1, 2, 4, and 5, an 84-month consecutive sentence for Count 3, and a 300-month consecutive sentence for Count 6. *Id.* at 3.

The 300-month consecutive sentence imposed for Count 6 is the primary focus of Mr. Madrid's current Motion. *See* (Doc. 144). At the time of Mr. Madrid's sentencing, 18 U.S.C. § 924(c) required the sentencing judge to impose a consecutive 300-month sentence for any second or successive Section 924(c) conviction. Particularly, because Mr. Madrid was found guilty of a Section 924(c) violation in Count 3, his Section 924(c) conviction in Count 6 triggered the 300-month mandatory stacking provision. The mandatory minimum consecutive sentence applied even though two substantive drug offenses were charged in the same Indictment resulting in convictions.

On October 19, 2016, this Court granted Mr. Madrid's first request for a sentence reduction under 18 U.S.C. § 3582(c)(2). (Doc. 127) at 1. The Court reduced Mr. Madrid's term of imprisonment from 619 months to 572 months, based on Amendment 782 to the U.S. Sentencing Guidelines. (Doc. 121) at 3. In pertinent part, Amendment 782 lowered Mr. Madrid's base-offense level from 36 to 34, authorizing the Court to modify Mr. Madrid's term of imprisonment. *Id.* at 4. The Court's sentence reduction only modified Mr. Madrid's term of imprisonment imposed for Counts 1, 2, 4, and 5—it did not alleviate the 300-month mandatory stacking provision mandated by statute for Count 6. At present, Mr. Madrid has served approximately 218 months of his 572-month sentence. (Doc. 145) at 2.

In his current Motion, Mr. Madrid requests a further sentence reduction under Section 403(a) of the First Step Act. (Doc. 144) at 2. Specifically, Section 403(a) clarifies that the 300-month stacking provision under Section 924(c) only applies if an offender has a previous Section 924(c) conviction. *Id.* Thus, in cases like here—where the stacking provision was based on a

2

contemporaneous Section 924(c) conviction, rather than an antecedent Section 924(c) conviction—the 300-month stacking provision is no longer mandatory. *Id.* at 3. As a result, Mr. Madrid requests that this Court modify his term of imprisonment to reflect the clarification provided in the First Sep Act. *Id.*

  II.    *Discussion*

As Mr. Madrid explains, the First Step Act of 2018 revised the sentencing scheme for individuals convicted of Section 924(c) offenses. Importantly, Section 403(a) of the First Step Act "amended § 924(c) so that a twenty-five-year mandatory minimum sentence for a second or subsequent § 924(c) conviction applies only if the defendant's first § 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction." *United States v. Maumau*, 993 F.3d 821, 826 (10th Cir. 2021). However, Section 403(b) of the First Step Act "limited the retroactivity of the changes implemented by Section 403(a)." *Id.* at 824. Therefore, criminal defendants sentenced to the 300-month mandatory minimum term of imprisonment under Section 924(c) were not automatically entitled to resentencing. *Id.* Instead, a defendant may seek relief from Section 924(c)'s prior mandate through a motion for compassionate release. *Id.* at 826.

The Tenth Circuit recently endorsed a "three-step test for 'courts considering motions filed under [18 U.S.C.] § 3582(c)(1),'" *i.e.*, the "compassionate release statute." *Id.* at 831 (quoting *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021) (explaining that "because this three-step test is consistent with the plain language of the statute, we adopt the test for use in this circuit"). Under this test, a district court may grant a motion to reduce sentence if: (1) "extraordinary and compelling reasons warrant such a reduction;" (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) it "considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that

3

they are applicable." *Maumau*, 993 F.3d at 831.  Before reaching the merits evaluated in this three-part test, the Court begins with the threshold issue of whether Mr. Madrid exhausted his administrative rights.  *See* 18 U.S.C. § 3582(c)(1)(A) (explaining that court may only award compassionate release after petitioner has "fully exhausted all administrative rights").

      *A. Administrative Exhaustion*

      To effectively exhaust under Section 3582, a petitioner must make an initial request for compassionate release under 28 C.F.R. § 571.61 and appeal a denial pursuant to Section 571.63.  *See* 18 U.S.C. § 3582(c)(1)(A); *see also* 28 C.F.R. § 571.60-571.64 (Procedures for Implementation of 18 U.S.C. § 3582(c)(1)(A)).  Specifically, after an initial denial by the warden, a petitioner "may appeal … through the Administrative Remedy Procedure," set forth in 28 C.F.R. § 542(B).  28 C.F.R. § 571.63(a).  Only after the petitioner's request is denied by the General Counsel or the Director of the BOP does the denial "constitute[] a final administrative decision."  28 C.F.R. § 571.63(b)-(c); *see also* 28 C.F.R. § 542.15(a) (explaining appeal first heard by Regional Director and then General Counsel).  Alternatively, if thirty days lapse from receipt of the request by the warden with no response, a district court is empowered to consider the Section 3582(c)(1)(A) motion.  18 U.S.C. § 3582(c)(1)(A).

      Here, Mr. Madrid requested compassionate release from the Warden at FCI Greenville on December 17, 2020.  (Doc. 128) at 7.  The Warden did not respond to Mr. Madrid's request for relief.  Mr. Madrid then waited the requisite 30 days before filing his Motion for compassionate release with the Court.  *See id.* (filing date of February 16, 2021).  As a result, Mr. Madrid effectively exhausted his administrative remedies.  *See* 18 U.S.C. § 3582(c)(1)(A) (explaining exhaustion requirements).  Therefore, the Court is empowered to consider the merits of Mr. Madrid's Motion requesting compassionate release.

B.  *Extraordinary and Compelling Reasons Supporting Relief*

Recently, the Tenth Circuit clarified that "[d]istrict courts, in carrying out the first step of § 3582(c)(1)(A)'s statutory test, decide for themselves whether 'extraordinary and compelling reasons' exist in a given case." *Maumau*, 993 F.3d at 833.  Writing for the panel, Chief Judge Briscoe explained that "Congress did not ... intend for the Sentencing Commission to exclusively define the phrase 'extraordinary and compelling reasons.'" *Id.* at 834.  Instead, the Sentencing Commission's guidance, describing the "characteristic[s] or significant qualities or features that typically constitute 'extraordinary and compelling reasons,'" should be viewed by courts as "guideposts to serve as part of the general policy statements to be considered ... under the second part of the statutory test...." *Id.*

In *Maumau*, the Tenth Circuit affirmed the district court's consideration of a "combination of factors" under this prong, including:  the defendant's "young age at the time of sentencing; the 'incredible' length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that [the defendant], if sentenced today, would not be subject to such a long term of imprisonment." *Id.* at 837 (internal punctuation and quotations modified).  Each of these reasons, endorsed by the Tenth Circuit in *Maumau*, apply equally here.  *See also McGee*, 992 F.3d at 1047 (explaining that district court must consider petitions for relief on "individualized, case-by-case basis").

Indeed, in this case, Mr. Madrid was 25 years old at the time of his arrest, with a category I criminal history classification.  *See* (Doc. 126-1) at 1, 16.  Moreover, Mr. Madrid also received the same stacked mandatory sentence under Section 924(c) that was subsequently eliminated by Congress under the First Step Act.  As a result, like the defendant in *Maumau*, if Mr. Madrid was sentenced today, he would not be subject to such a long term of mandatory imprisonment.  *See*

5

*Maumau*, 993 F.3d at 837.  Rather, after passage of the First Step Act, Mr. Madrid's 300-month

mandatory sentence for Count 6 would be reduced to 60 months imprisonment.  Together, these

considerations constitute extraordinary and compelling reasons supporting Mr. Madrid's request

for a sentence reduction.

     *C.  Applicable Policy Statements*

     The second part of Section 3582's substantive test is to determine whether a sentence

reduction is consistent with the Sentencing Commission's "applicable policy statements,"

including "any descriptions given by the Sentencing Commission of what it considers to be

'extraordinary and compelling reasons.'"  *Maumau*, 993 F.3d at 834.  In its review of a

petitioner's motion, the district court should look to these "characteristic or significant qualities

or features" authored by the Sentencing Commission as "guideposts."  *Id.*  However, the Tenth

Circuit explained that "[s]ince the First Step Act was enacted … the [Sentencing] Commission

has been unable to comply with its statutory duty of promulgating a post-First Step Act policy

statement regarding the appropriate use of the sentence reduction provisions of §

3582(c)(1)(A)(i)."  *Id.* at 836.  Therefore, the current guidelines are inapplicable to

compassionate release motions brought by defendants and do not "constrain district courts'

discretion to consider whether any reasons are extraordinary and compelling."  *Id.* at 837; *see

also McGee*, 992 F.3d at 1048 (concluding "district court erred in considering itself bound by

[the Sentencing Commission's] policy statement").  As a result, the Court moves directly to

consideration of the third factor.

     *D.  Section 3553 Factors*

     Under the third and final prong of the Court's three-step test, the Court "considers the

factors set forth in § 3553(a), to the extent that they are applicable."  *See Maumau*, 993 F.3d at

831. Among other considerations, Section 3553 weighs the nature and circumstances of the offense and the history and characteristics of the petitioner. *See* 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). In addition, the Section 3553 factors consider the need for deterrence, the seriousness of the offense, the protection of the public, and the need to avoid unwarranted sentencing disparities among similar offenders. *Id.* The considerations at this stage reflect those contemplated by the Court at the time of its original imposition of judgment and sentencing. *See id.*

There is no dispute that the 300-month stacking provision is excessive, under the circumstances, and should be reduced in accordance with the First Step Act's new directive. (Doc. 145) at 5. However, the parties' dispute the scope of Mr. Madrid's sentence reduction. On the one hand, Mr. Madrid requests his immediate release from custody. *See* (Doc. 144) at 8. On the other hand, the United States requests that Mr. Madrid be resentenced to the current minimum period of imprisonment under Section 924(c), a term of 60 months. (Doc. 145) at 5. The Court agrees with the United States.

Most notably, reducing Mr. Madrid's sentence on Count 6 to the current 60-month minimum is consistent with Judge Conway's intent when he imposed the original sentence. Conversely, a reduction to time served would not only efface Mr. Madrid's sentence under Count 6, but also undermine the time he is required to serve under Counts 1, 2, 3, 4, and 5. This is particularly poignant where, as here, Mr. Madrid was already afforded a sentence on the low-end of the guideline range for his drug-related crimes in Counts 1, 2, 4, and 5. (Doc. 126-1) at 20 (calculating guideline sentence). Plainly stated, while Mr. Madrid has demonstrated that he is entitled to relief on Count 6, he does not illustrate any circumstances that support further relief for a shorter sentence on the other Counts.

In reaching this conclusion, the Court considered that Mr. Madrid's underlying offense accounted for his first period of incarceration. (Doc. 149) at 4. Furthermore, the Court notes that Mr. Madrid was young at the time of his arrest and has already served 18 years in custody. *See* (Doc. 126-1) at 16. In addition, the Court considered that Mr. Madrid indicated prior to sentencing that he had a methamphetamine addiction, likely coloring his judgment related to the underlying offense conduct. *See id.* at 18.

Notwithstanding these considerations, the crimes for which Mr. Madrid was sentenced remain serious. Indeed, Mr. Madrid distributed large amounts of methamphetamine to smaller dealers in New Mexico. *Id.* at 12. In support of his distribution efforts, Mr. Madrid had "runners" who delivered the methamphetamine for him and assisted in intimidating people who failed to pay their debts. *Id.* Moreover, Mr. Madrid has struggled to comply with BOP rules during his time in custody. Most notably, he has committed several infractions for conduct ranging from possession of narcotics to fighting with other inmates. *See* (Doc. 145-1) at 1-4.

All told, the Court concludes that Mr. Madrid is entitled to the 20-year sentence reduction on his conviction under Count 6. Indeed, both the individual circumstances underlying Mr. Madrid's conviction and the First Step Act's guidance support this conclusion. However, Mr. Madrid has not demonstrated that he is entitled to a further reduction. Instead, Mr. Madrid will serve the remainder of his term of imprisonment as imposed by Judge Conway.

In closing, the Court notes that the reduced time remaining on Mr. Madrid's sentence allows him to further prepare himself for success upon release. The Court applauds Mr. Madrid for completing his GED, participating in several personal development programs, and for helping to serve as a positive role model in the BOP community. *See* (Doc. 149) at 4-5. The Court encourages Mr. Madrid to continue his efforts to enhance his chances of success upon release,

and to nurture his family relationships to meaningfully contribute to society after he serves his sentence.

III.    *Conclusion*

Based on the foregoing, the Court reduces Mr. Madrid's sentence from 572 months to 332 months imprisonment.  Specifically, Mr. Madrid's sentence under Count 6 is reduced from 300 months to 60 months.  As a result, the Court grants in part and denies in part Mr. Madrid's Motion (Doc. 144).

IT IS ORDERED.

UNITED STATES DISTRICT JUDGE

9